## Young Women's Christian Association of Gettysburg v. Gettysburg

*Gary Hartman*, for plaintiff.
*Donald G. Oyler*, for defendant.

SPICER, *P.J.*, December 7, 1978—The Borough of Gettysburg (hereinafter for convenience called the borough) and Young Women's Christian Association of Gettysburg, Pennsylvania (hereinafter for convenience called YWCA) have filed a petition for relief under the Uniform Declaratory Judgments Act, 42 Pa.C.S.A. §7532. Since there is an actual controversy based upon a question of law, the court grants relief. However, since all relevant facts have not yet been resolved for reasons later discussed, the relief will be somewhat qualified.

It has been indicated to the court that the YWCA is anticipating a sizeable gift of money for the construction of a YWCA facility. However, the gift is conditioned upon the YWCA acquiring land, either by grant or by long-term lease, upon which the facility could be built. The YWCA originally asked the borough to convey enough land but the borough took the position it could not lawfully do this. The YWCA then asked the borough for a long-term lease of a part of the recreational area called Recreation Park. (This land is commonly referred to in the

borough as Rec Park, and for convenience we will do so in this opinion.) The borough was unwilling to expend time and money in the drafting of a lease unless it was assured it had the power to enter into the lease. Thus, although we do not have the actual terms of the lease to review nor a firm commitment based upon policy findings by the borough to enter into the lease, we will review the controversy and hand down an order.

The borough acquired Rec Park on August 13, 1958, by a deed which subjected the land to a use restriction. The land was and is to be used "for playground and recreational purposes only." Aside from the normal questions concerning the power of the borough to lease, the restriction adds another, and that is, would the leasing of the land be prevented because of the restriction?

The borough has suggested that the lease would not be prevented by the restriction but that use permitted by the lease would have to be severely limited so as not to violate the restriction.

The court agrees with this position but feels further discussion is warranted. A lease strictly comporting to the requirements of the use covenant manifestly would not violate the covenant. However, it must be said that the restriction must be subject to reasonable interpretation. Functions performed by organizations such as the YWCA, YMCA, YMHA, and YWHA are commonly accepted and understood by the community to be primarily recreational in nature. Of course, there are many other purposes of these organizations, but facilities are generally regarded as recreational and community oriented. The mere fact that every organized activity needs an organization does not detract from the primary function of the activity.

Lining a baseball field for a game or carrying on a fund raising campaign for uniforms may not be recreational in themselves, but are necessarily related activities. The subject is replete with examples. Even the simplest organized recreational activity may produce myriad committees that sometimes seem to dwarf the principal activity. Investment committees, building committees, and the like, though sometimes apparently taking more time and energy than the activities which they support, are all related to those activities.

Thus, if a YWCA organization is required to maintain a YWCA facility used primarily for recreation, some latitude must be given to the activities of the organization.

The second issue presented is raised because the YWCA has indicated it will restrict users of the facility to persons paying a fee. Thus, the borough submits its power to lease is restricted both by the provisions of The Borough Code of February 1, 1966, P.L. (1965) 1656, 53 P.S. §46201, and by the fact that the land must be maintained for public purposes.

It would appear clear that the Rec Park is presently a public facility. Although the YWCA is a non-profit corporation and apparently qualifies as a public charity: City of Pittsburgh v. YWCA, 72 Pitts. L.J. 977 (1924); its purposes are generally to promote christianity among young women. However, membership in the organization is non-restrictive, subject only to the payment of a fee.

Thus, the central issue is whether public lands can be restricted to fee-paying persons. If the borough was conducting the activity, the answer would be certainly in the affirmative.

Governments often restrict the use of public

property to the members of the paying public. We live in a world of toll roads, bridges, parking lots and even municipal swimming pools where being a member of the public does not gain admittance without payment of money. Whatever the borough can do, however, the case of a lessee may be different.

A provision in The Borough Code, 53 P.S. §47713, specifically authorizes the lease of recreational land to school boards or school athletic associations organized by such boards and provides that such leases "may permit such school board . . . to charge admission . . . and to deny persons refusing to pay admission access. . . ."

The borough has submitted that silence by the legislature as to other situations implies that leases to other entities charging admission would be unlawful. It certainly is a well-recognized principle that where the legislature has specifically authorized an action, it impliedly has excluded other actions. See Cocco v. Degnan Chevrolet, Inc., 64 D. & C. 2d 6 (1973). However, The Borough Code generally authorizes leasing of borough land without restriction "as shall be deemed to be to the best interest of the borough." 53 P.S. §46201(4).

Even if the provisions of section 47713 and section 46201(4) were in conflict, it would not necessarily mean that section 46201(4) must be disregarded. Even when sections are in conflict, the provisions must be read together so that effect can be given to both: 1 Pa.C.S.A. §1933; Appeal of Yerger, 460 Pa. 537, 333 A. 2d 902 (1975). Furthermore, both sections should be interpreted liberally so as to effect their object "and to promote justice." 1 Pa.C.S.A. §1928.

Thus, it is apparent that a borough may lease

recreational land to a school board or athletic board even in the absence of a determination that such a lease is in the best interest of the borough. Before a lease to a group such as the YWCA would be valid, the law imposes the requirement that there be a finding, based upon factors considered by the borough council, that such a lease would be in the best interest of the borough.

Since it would be hard to imagine a profit making activity being either publicly oriented or in the best interests of the borough, the lease to the YWCA should contain provisions giving the borough reasonable controls over the fees charged so that such fees always must be shown to bear a reasonable relationship to the costs of maintaining such a facility.

In accordance with the foregoing opinion, the attached order will be entered.

## ORDER

And now, December 7, 1978, the court finds that there exists an actual controversy, the resolution of which depends upon a question of law, and, therefore, in accordance with the Uniform Declaratory Judgments Act, finds and holds that the Borough of Gettysburg is authorized to lease land in the Borough's recreational park to the Young Women's Christian Association of Gettysburg, Pennsylvania, if the lease conforms to the requirements set forth in the attached opinion.

This order entered nisi this date shall be confirmed absolute if no exceptions are filed hereto within 30 days after notice being given to the public generally by publication one time in the Gettysburg Times and in the Adams County Legal Journal, and by certified mail, return receipt requested, to the Attorney General of the Commonwealth.